**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 2, 2025**

# In the Court of Appeals of Georgia

A25A0415. ARC GAMING & TECHNOLOGIES, LLC v. HIRAM
       IMP, INC. et al.

MARKLE, Judge.

Arc Gaming & Technologies, LLC a/k/a Lucky Bucks, LLC ("Arc") is in the business of coin-operated amusement machines ("COAMs"). Following a dispute between Arc and Hiram Imp, Inc. and its owner, Anil Patel, (collectively "Hiram"), concerning their COAM location agreement, Arc sought arbitration. Hiram failed to pay its share of the arbitration fees, and Arc moved for default judgment pursuant to OCGA § 50-27-104 (d) (2) (2021).[1] The arbitration hearing officer denied Arc's

---

[1] Under OCGA § 50-27-102 (d) (2) (2021), when a hearing officer oversees a dispute involving COAM agreements, the parties share the costs equally "[a]nd [i]f any party fails to timely pay the costs of the hearing officer's review within ten days of service of notice of costs by the hearing officer, the hearing officer shall grant a default judgment on liability against the nonpaying party."

motion for default judgment, and Arc sought review by the Georgia Lottery Corporation ("GLC"). The GLC affirmed and Arc filed a timely petition for writ of certiorari pursuant to OCGA § 5-4-6.[2] The superior court denied the petition as premature, and it remanded the case for further proceedings in arbitration. Arc appeals, claiming that the superior court erred in concluding that its petition was premature and not ripe for consideration. For the following reasons, we affirm.

> The ownership and operation of COAMs is a highly regulated industry, governed by an extensive statutory scheme. Importantly, the GLC has jurisdiction of all disputes between and among any licensees or former licensees relating in any way to any agreement involving COAMs. Such disputes are initially referred to a hearing officer, who conducts a hearing in accordance with GLC rules, which must be consistent with the Georgia Arbitration Code. Once the hearing officer issues a decision, that decision may be appealed to the chief executive officer of the GLC. In turn, appeals from actions of the chief executive officer shall be to the Superior Court of Fulton County.

(Citations, punctuation, and footnotes omitted.) *Singh et al. v. Ultra Group of Companies, Inc.*, 374 Ga. App. 22, 24-25 (910 SE2d 834) (2024); see also OCGA § 50-27-102 (d) (5) (2021). Where, as here, a case turns on statutory interpretation and

---

[2] The General Assembly has since repealed this statute. In its place, the General Assembly enacted OCGA §§ 5-3-2 and 5-3-6, which became effective after Arc filed its petition for writ of certiorari. Under the new statutory scheme, there is "a uniform procedure" to appeal via a "petition for review." OCGA §§ 5-3-2 (b) (1) and 5-3-6 (a).

resolution of questions of law, we apply a de novo standard of review. *Amazing Amusements Group v. Wilson*, 353 Ga. App. 256 (835 SE2d 781) (2019).

The underlying action arises from a location agreement dispute between Arc, the owner of certain COAMs, and Hiram, a location licensee, which allowed Arc to operate COAMs on its properties. After Hiram notified Arc it was terminating the contract effective May 9, 2022, Arc filed an action for injunctive relief, declaratory judgment, breach of contract, and attorney's fees and costs. Arc based its claim on a location agreement that it asserted was in effect until May 2028.

Arc filed a demand for arbitration of the dispute and was referred to National Arbitration and Mediation ("NAM"). See OCGA § 50-27-102 (d) (1) and (2) (2023) (all disputes between master licensees, location owners, and location operators must be referred to an arbitration hearing officer). Hiram answered and alleged that a separate location agreement was applicable, which expired in May 2022.

While the case was proceeding in arbitration, Arc received an email, seeking payments for the overdue balance Hiram owed for the arbitration costs. Arc contacted Hiram to inquire whether it planned on paying the outstanding invoice. After receiving no response, Arc paid the outstanding amount.

Thereafter, Arc filed a motion for default judgment as to liability against Hiram, arguing that its failure to pay the arbitration costs resulted in an automatic default under OCGA § 50-27-102 (d) (2) (2021). Following a hearing, the hearing officer denied Arc's default judgment motion, explaining that the notice of costs was not sent by the hearing officer as required by the statute, but instead the invoice was sent by NAM administrators. See OCGA § 50-27-102 (d) (2) (2021).

Arc timely appealed to the GLC chief executive officer. See GLC Rule 13.2.5 (a) (3) (a party "aggrieved by the Order entered by a Hearing Officer appointed under OCGA §50-27-102 (d), may appeal by filing a Request for Reconsideration with the Chief Executive Officer . . . no later than ten (10) days after receipt of the Order."). The GLC did not issue a ruling on Arc's request within 30 days, thereby affirming the hearing officer's order as a matter of law. See GLC Rule 13.2.5 (1) (b) (4). Arc then filed a timely petition for writ of certiorari pursuant to OCGA § 5-4-6.

The same day it filed its appeal with the GLC, Arc also filed a motion for reconsideration with the hearing officer. See GLC Rule 13.2.5 (a) (1). After a hearing, the hearing officer denied Arc's motion for reconsideration. Arc then filed an appeal of the denial of its motion for reconsideration with the GLC chief executive officer.

4

After no action by the GLC, the hearing officer's decision was affirmed by operation of law. See GLC Rule 13.2.5 (1) (b) (4). Arc filed a timely petition for review to the superior court pursuant to OCGA § 5-3-1 et seq.

The superior court consolidated the petition for review into the petition for writ of certiorari.[3] The superior court subsequently denied Arc's petition for writ of certiorari as premature because the arbitration remained pending, and there was no final judgment, as required under OCGA § 5-4-6. Consequently, the superior court remanded the case to the hearing officer for a final determination on the merits. This appeal followed.[4]

---

[3] The statutory scheme for disputes involving COAMs does not contemplate a motion for reconsideration to the hearing officer in seeking an appeal. See *Lucky Fortune, LLC v. Ga. Lottery Corp.*, 367 Ga. App. 263, 266 (885 SE2d 297) (2023). Instead, to exhaust administrative remedies, a party must file its appeal with the chief executive officer within ten days of receipt of the order. Id. at 266-267 (affirming the superior court's dismissal of appellant's petition for certiorari because it first sought reconsideration from the hearing officer and did not file its appeal with the chief executive officer within ten days of receipt of the order). Arc's petition for writ of certiorari was the proper procedure for appealing the hearing officer's denial of the default judgment motion. Furthermore, the denial of a motion for reconsideration is generally not in and of itself directly appealable. *Bell v. Cohran*, 244 Ga. App. 510, 511 (536 SE2d 187) (2000)

[4] Although appeals "from decisions of the superior courts reviewing decisions of . . . state and local administrative agencies" must come by discretionary application under OCGA § 5-6-35 (a) (1), the GLC is not a state agency and, as a result, a party

In its sole enumeration of error, Arc asserts that the superior court erred in concluding that its petition was premature and not ripe for consideration. We are not persuaded.

Here, Arc specifically filed a petition for writ of certiorari pursuant to OCGA § 5-4-6 and OCGA § 50-27-76. OCGA § 50-27-76 (a) provides that an "[a]ppeal by an affected person from *all actions* of the corporation or chief executive officer shall be to the Superior Court of Fulton County." (Emphasis added.) But that statute does not create a right to appeal, but merely clarifies venue. See *Amazing Amusements Grp., Inc.*, 353 Ga. App. at 260. As we have explained, "the phrase 'all actions' must be read in harmony with the statutory provisions that authorize parties to challenge GLC actions and the statutory provisions that authorize the GLC to establish an appeal process for those challenges." Id. at 262-263 (superior court properly dismissed petition for writ of certiorari of hearing officer's decision because of the failure to exhaust required administrative remedies). Moreover,

> where, as here, the term "all actions" is undefined, and its plain meaning
> is not made clear from the language in OCGA § 50-27-76 itself, . . . we

is not required to file an application for discretionary review to seek review of a superior court's order. *Amusement Leasing, Inc. v. Ga. Lottery Corp.*, 352 Ga. App. 243, 244-246 (1) (834 SE2d 330) (2019).

must presume that the statute was enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. It is therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and its meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.

(Citation and punctuation omitted.) Id. at 260. Consequently, we rejected the argument that the phrase "all actions" "should mean all actions in the most literal and broad sense — whether final, temporary, pending, or otherwise." Id. at 258.

In this case, we must harmonize OCGA § 50-27-76 (a) with OCGA § 5-4-6. OCGA § 5-4-6 (a) provided that "all writs of certiorari shall be applied for within 30 days after *the final determination of the case* in which the error is alleged to have been committed."[5] (Emphasis added.) Although Arc did exhaust its administrative remedies by timely appealing to the hearing officer's decision to the GLC, there is no

---

[5] Contrary to Arc's assertion, a petition for review to the superior court pursuant to OCGA § 5-3-1 et seq. also requires a final judgment. OCGA § 5-3-4 (a) provides that "the superior and state courts shall have appellate jurisdiction pursuant to this chapter over *a final judgment* of a lower judicatory." (Emphasis added.) And a "final judgment" is defined as "a decision of a lower judicatory in a case that is no longer pending in a lower judicatory in which a petitioner has . . . [e]xhausted all appeals or administrative remedies available in the lower judicatory[.]" OCGA § 5-3-3 (4) (A). Although Arc exhausted its administrative remedies, the case remains pending in arbitration.

final determination that would allow it to file a petition for writ of certiorari in the superior court under OCGA § 5-4-6 (a). Thus, the superior court properly denied Arc's petition and remanded the case for arbitration on the merits, and we affirm.

*Judgment affirmed. Doyle, P. J., and Padgett, J., concur.*